UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORA PEREA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 20-cv-00610-DMS-AHG<br><br>**ORDER DENYING MOTION TO REMAND** |

Pending before the Court is Plaintiff Nora Perea's motion to remand this action to the San Diego Superior Court. Defendant Fedex Ground Package System, Inc. filed a response in opposition to Plaintiff's motion and a response to Plaintiff's objection to evidence. Plaintiff filed a reply. For the reasons given herein, the Court denies Plaintiff's motion.

**I.**

**BACKGROUND**

Plaintiff Nora Perea was formerly employed by Defendant Fedex Ground Package System, Inc. as a non-exempt warehouse package sorter and handler. Plaintiff was a part-time employee—she worked 3.5 to 4.0 hours shifts, 5 days a week. Plaintiff alleges that

1

"[t]here would be 2 or 3 occasions per week that [she], and other similarly-situated and aggrieved employees, would report to work, go through security, clock into work, and work about 45 minutes, only to be sent home without receiving a reporting time work shift premium at the requisite rate as required by California law." (ECF No. 1-2 ("FAC"), at ¶ 9). Plaintiff further alleges that Defendant, at all relevant times, maintained a consistent policy and practice of failing to provide accurate wage statements and failing to timely compensate employees.

Based on these alleged facts, Plaintiff brought suit, on behalf of herself and others similarly situated, against Defendant in San Diego Superior Court. In her First Amended Complaint ("FAC"), Plaintiff asserts claims for (1) failure to pay report time wages in violation of California Labor Code § 218 and § 5 of California's Industrial Welfare Commission ("IWC") Wage Order 9-2001; (2) failure to provide accurate itemized wage statements in violation of California Labor Code § 226 and § 7 of IWC Wage Order 9-2001; (3) failure to timely pay wages due upon separation of employment in violation of California Labor Code §§ 201, 202, and 203; (4) violation of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*; (5) civil penalties under California's Private Attorney General Act ("PAGA") for failure to pay reporting time wages; (6) civil penalties under PAGA for failure to provide accurate itemized wage statements; (7) civil penalties under PAGA for failure to timely pay wages upon termination of employment; and (8) civil penalties under PAGA for violation of California's Labor Code and IWC Wage Orders. Plaintiff seeks injunctive relief, restitution, disgorgement, an award of unpaid wages, statutory penalties, liquidated damages, attorney's fees and costs.

On March 30, 2020, Defendant removed the case to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendant included the Declarations of Ms. Andrea K. Cox and Mr. Alexander Chemers to support a finding of removability. In response to the Notice of Removal, Plaintiff filed the present motion, arguing Defendant

has failed to satisfy its burden of establishing the class claims exceed the $5,000,000 jurisdictional minimum under CAFA.

## II.

## LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by the Constitution and Congress. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action from state court to federal court only if the district court could have original jurisdiction over the matter. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, . . . the district court must remand if it lacks jurisdiction.").

Pursuant to CAFA, this Court has original jurisdiction over class actions in which there are at least 100 class members, at least one of which is diverse in citizenship from any defendant, "and for which the aggregate amount in controversy exceeds the sum of $5 million, exclusive of costs and interest." *Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1196 (9th Cir. 2015); 28 U.S.C. § 1332(d). A "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). To "determine whether the matter in controversy" exceeds the sum of $5 million, "the claims of the individual class members shall be aggregated." *Id.* § 1332(d)(6). And those "class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class." *Id.* § 1332(d)(1)(D).

The Ninth Circuit has directed courts to "strictly construe the removal statute against removal jurisdiction[,]" so that "any doubt as to the right of removal" is resolved in favor of remanding the case to state court. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

However, this presumption does not apply to cases removed under CAFA. *See Dart Cherokee Basin Operating Co., LLC. v. Owens*, 574 U.S. 81, 88 (2014) ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.") (internal quotation marks and citations omitted). Thus, when dealing with cases arising under CAFA, its provisions must be "read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *See id.* (internal quotation marks and citations omitted). Nevertheless, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 695 (9th Cir. 2006) (per curiam).

### III.
### DISCUSSION

There is no dispute the present action is a "class action" within CAFA, as the action contains class allegations under California Code of Civil Procedure § 382. (ECF No. 1-2 ("FAC") at ¶ 1). There is also no dispute that the action involves more than 100 employees and that the minimal diversity exists—the citizenship of at least one of the employees is different from Defendant's citizenship. The only issue, therefore, is whether Defendant has shown the amount in controversy requirement is satisfied. For the reasons explained below, the Court finds Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000, and thus, remand is inappropriate.

"[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Inv. Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). However, if the defendant's "assertion of the amount in controversy is challenged by [the] plaintiffs in a motion to remand, the Supreme Court has said that both sides submit proof and the court then decides whether the preponderance lies." *Id.* at 1198 (citing *Dart*, 574 U.S. at 82). Both parties, therefore, bear the burden of presenting a calculation or

analysis of the potential damages. *See Horton v. NeoStrata Co. Inc.*, No. 16-cv-02189, 2017 WL 2721977, at *4 (S.D. Cal. June 22, 2017) ("Case law leaves little doubt that Plaintiffs are wholeheartedly mistaken in arguing that they have no burden at this juncture.").

In support of the Notice of Removal, Defendant calculated the amount in controversy based on Plaintiff's claims for (1) failure to pay reporting time wages and (2) waiting time penalties. As to the first cause of action, Defendant considered Plaintiff's allegations that two to three times per week she would report to work only to be sent home after about 45 minutes and that employees are entitled to reporting time shift premium pay "for half the usual or scheduled day's work, but in no event for less than two hours nor more than four hours, at the employees' regular rate of pay." (FAC at ¶¶ 9, 35). Defendant also considered, based on its records, that the number of current and former employees who held the non-exempt position of Part-Time Package Handler in California from March 6, 2019 to March 2020, which was 15,015 employees, the number of weeks those employees worked, which was 225,964 weeks, and their hourly pay, which was at least $12.00 per hour. (ECF No. 1 at 8–9). Defendant noted that per Plaintiff's allegations, employees reporting for only 45 minutes are owed at least 75 minutes of reporting time pay to achieve the two-hour minimum. (*Id.* at 9). Defendant then calculated that a violation rate of only two reporting time violations per week, multiplied by the number weeks worked, the pay rate, and the amount of time owed results in a claim for **$6,778,920** (225,964 x $12 x 2 x 1.25). (*Id.*).

As to the second cause of action, the California Labor Code § 203 penalties are "equivalent to the employee's daily wages for each day he or she remained unpaid for a total of 30 days." (*Id.* at 10 (quoting *Mamika v. Barca*, 80 Cal. Rptr. 2d 175, 178 (Cal. App. Ct. 1998)). Based on Plaintiff's first cause of action seeking reporting time wages, Defendant assumed "Plaintiff's theory is that such alleged unpaid wages still have not been paid to Plaintiff and putative class members." (*Id*. 10–11). Defendant, therefore, calculated the amount in controversy for Plaintiff's second cause of action based on a 30-

day penalty for each former employee's daily wage rate. (*Id.*). Defendant found at least 8,256 non-exempt Part-Time Package Handlers have separated from employment with Defendant since March 5, 2019 and that a work day for the purposes of the waiting time penalty constitutes four work hours. (*Id.* at 11). Defendant then multiplied the number of former employees by the number of days without pay, the number of hours in a work day, and the pay rate (8,256 x 30 x 4 x $12). This calculation results in a claim for **$11,888,640**.

Defendant concluded that the amount in controversy for Plaintiff's first two causes of action is **$18,667,560**. Defendant then considered the potential attorney's fees award under the California Labor Code. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that if a plaintiff is entitled under a contract or statute to future attorney's fees, then "such fees are at stake in the litigation and should be included in the amount in controversy"). Defendant estimated the attorney's fees to be 25 percent of the total $18,667,560, which is **$4,666,890**. Defendant's ultimate evaluation of the amount in controversy—accounting only for Plaintiff's first two causes of action and attorney's fees—was **$23,334,450**. Consequently, Defendant argues Plaintiff's case easily exceeds CAFA's $5,000,000 jurisdictional minimum.

In support of her motion to remand, Plaintiff contends Defendant's calculations are speculative and erroneous. Specifically, Plaintiff argues that for the first cause of action, instead of incorrectly assuming every employee suffered the exact same damages as Plaintiff, Defendant should have analyzed its payroll and time-keeping records to find "the actual number of clocked-in events where employees were sent home without more work." (ECF No. 7-1 ("Mot.") at 6). Plaintiff argues Defendant made the same mistake with its calculation of damages for Plaintiff's second cause of action—Defendant should have used "the actual number of qualifying individuals separated from employment" without pay, instead of assuming "the entire universe of separated employees is owed pay." (*Id.* at 6). Plaintiff also objects to the Declaration of Ms. Cox, which was filed in support of Defendant's Notice of Removal, for lack of foundation and personal knowledge. Plaintiff does not, however, present her own calculation of damages or any competing evidence.

Plaintiff cites *Ibarra v. Manheim Investments Inc.* in support of her argument Defendant should not have assumed all employees suffered the same violation as she did. In *Ibarra*, plaintiffs challenged a company's "pattern and practice" of violating the California Labor Code for failure to pay minimum wages and overtime, provide breaks, furnish wage statements, and pay timely wages upon termination. *Ibarra*, 775 F.3d at 1196. The Ninth Circuit held the removing-defendant's calculation of the amount in controversy was not reasonable because the defendant assumed putative class members were deprived of a break and worked overtime without compensation "on each and every shift." *Id.* at 1199. This assumption, the court noted, contradicted the plaintiff's complaint, which alleged he worked overtime without compensation on "multiple occasions during his employment . . . but not on each and every shift." *Id.* (internal quotations omitted). The court remanded the case to the trial court to "allow both sides to submit evidence related to the contested amount." *Id.*

Plaintiff's argument is not persuasive. Unlike the defendant in *Ibarra*, Defendant specifically considered Plaintiff's FAC allegations in calculating the amount in controversy. Plaintiff alleges that she was sent home without receiving a reporting time work shift premium two to three times a week. (Compl. at ¶ 9). Plaintiff further alleges that "Defendant had a *consistent policy and practice* of failing to pay Plaintiff and similarly-situated and aggrieved employees all wages due" and "failing to timely compensate non-exempt employees, including Plaintiff, for all wages owed upon separation of employment." (*Id.* at ¶¶ 14, 17). Defendant then assumed for the purposes of its calculations that employees during a one-year period were sent home two times per week. Defendant did not assume that every employee was sent home without receiving a reporting time work shift premium on each and every shift. Defendant's assumptions, therefore, are not "pulled out of thin air but [have] some reasonable ground underlying them," specifically, Plaintiff's allegations of her own experience and of a greater policy and practice. Courts often approve similar assumptions, especially where the plaintiff fails to provide her own calculations or evidence of the amount in controversy. *See Feao v.*

*UFP Riverside, LLC*, No. 17-3080, 2017 WL 283620, at *4–5 (C.D. Cal. June 29, 2017) (finding defendant's assumptions reasonable where plaintiff used "no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation"); *Dobbs v. Wood Group PSN, Inc.*, 201 F. Supp. 3d 1184, 1188–89 (E.D. Cal. 2016) (finding a defendant's 100 percent violation assumption reasonable "where plaintiff's complaint specifically offers a uniform practice" and "plaintiff offers no competent evidence in rebuttal to a defendant's showing").

Plaintiff's argument Defendant should have used its own time and payroll records to find the exact number of California Labor Code violations is also unconvincing. It is well-settled law that a defendant "need not 'produce business records setting forth the precise number of employees in [the] putative class . . . and the precise calculation of damages alleged to meet its burden regarding the amount in controversy.' " *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1150 (S.D. Cal. 2018) (quoting *Long v. Destination Maternity Corp.*, 15cv2836, 2016 WL 1604968, at *6 (S.D. Cal. Apr. 21, 2016)). To hold otherwise would place a burden too hefty and demanding on the defendant. Courts, therefore, consistently allow defendants to "rely on reasonable assumptions" in calculating the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

Finally, the Court turns to Plaintiff's argument that Ms. Cox's declaration is lacking. In support of this argument, Plaintiff cites *Richards v. Now, LLC*, No. 2:18-cv-10152, 2019 WL 2026895, at *7 (C.D. Cal. May 8, 2019). In *Richards*, the court found that the defendant failed to establish the declarant "ha[d] personal knowledge regarding employment records generally" because her "position does not naturally correlate to one requiring comprehensive knowledge and familiarity with all of [the defendant's] employment records[.]" *Richards*, 2019 WL 2026895, at *7. Notably, the declarant in that case was "merely a 'Staff Accountant' at [the company]." *Id.*

Ms. Cox, unlike the declarant in *Richards*, is the Managing Director of Human Resources Service Delivery. (ECF No. 1-5 ("Cox Decl."), at ¶ 1). As Managing Director,

1   she is "familiar with and ha[s] access to Defendant's records reflecting the employment
2   status and history as well as pay rate information for its employees." (*Id.*). Ms. Cox is also
3   familiar with Defendant's "business records regarding Plaintiff" and Defendant's "data
4   regarding all active and former California non-exempt Package Handlers." (*Id.* at ¶¶ 8, 9).
5   Given Ms. Cox's position and her familiarity with Defendant's business records and the
6   applicable data, the Court finds there is sufficient foundation for her personal knowledge
7   as to the accuracy of the information presented. It is also worth noting that *Richards*
8   specifically supports this finding. There, the court notes that a sufficient foundation for
9   personal knowledge exists where the declarant maintains "a managerial [role] requiring
10  authentication and oversight of voluminous business records for the entire company
11  regarding employee count, payroll, and shift information." *Richards*, 2019 WL 2026895,
12  at *8; *id.* (finding that declarants in other cases had sufficient knowledge because they
13  "were a Vice President of Human Resources and a Director of Compensation and HR
14  Systems"); *see also Bryant*, 284 F. Supp. 3d at 1150 (finding the declarant established a
15  sufficient foundation for her testimony by "declaring knowledge of the employment data
16  provided in her declaration was based on her normal business responsibilities and personal
17  review of Defendant's personnel records").
18       Having considered the allegations in Plaintiff's Complaint, the parties' briefing, and
19  Defendant's evidentiary submissions, the Court concludes Defendant has satisfied its
20  burden. Defendant has demonstrated by a preponderance of the evidence that the amount
21  in controversy exceeds CAFA's jurisdictional minimum of $5,000,000. Accordingly, the
22  Court denies Plaintiff's motion to remand.
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

# IV.

# CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's motion for remand is denied.

**IT IS SO ORDERED.**

Dated:  July 15, 2020

Hon. Dana M. Sabraw
United States District Judge